UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESLEY HAYES COLLINS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C11-1540-RAJ-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Wesley Hayes Collins appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a 31 year-old man with a GED degree. Administrative Record ("AR") at 34-35. His past work experience includes employment as a kitchen helper, lubrication technician, janitor, cashier, sandwich maker, and fast food worker. AR at 18. Plaintiff was last gainfully employed in 2007. AR at 12.

REPORT AND RECOMMENDATION - 1

On July 10, 2008, plaintiff filed a claim for SSI payments. On June 27, 2008, he filed an application for DIB, alleging an onset date of November 2, 2006. AR at 10. Plaintiff asserts that he is disabled due to shoulder bursitis, bipolar disorder, attention deficit hyperactivity, anxiety disorder, history of polysubstance dependence, with heroin dependence in remission on agonist therapy. AR at 12.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 10. Plaintiff requested a hearing which took place on June 15, 2010. AR at 26-60. On July 28, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 10-20. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 4.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

As the claimant, Mr. Collins bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 28, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.

2. The claimant has not engaged in substantial gainful activity since November 2, 2006, the alleged onset date.

3. The claimant has the following severe impairments: shoulder bursitis; bipolar disorder; attention deficit hyperactivity disorder (ADHD); anxiety disorder; history of polysubstance dependence, with heroin dependence in remission on agonist therapy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant should never climb ladders, ropes, or scaffolds. He is limited to occasional overhead reaching with the right, nondominant upper extremity. He can occasionally crawl. He can frequently climb ramps and stairs, balance, stoop, kneel, and crouch. He should avoid concentrated exposure to vibrating tools, machines, and vehicles. He should avoid working in hazardous conditions such as proximity to unprotected heights and moving machinery. He is capable of tasks that can be learned in 30 days or less, involving no more than simple work-related decisions and few workplace changes. He is capable of minimal public contact and occasional and superficial interaction with coworkers and supervisors.

| | | |
|---|---|---|
| 1 | 6. | The claimant is unable to perform any past relevant work. |
| 2 | 7. | The claimant was born on XXXXX, 1979 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2] |
| 3 | | |
| 4 | 8. | The claimant has at least a high school education and is able to communicate in English. |
| 5 | 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. |
| 6 | | |
| 7 | | |
| 8 | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. |
| 9 | | |
| 10 | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from November 2, 2006, through the date of this decision. |
| 11 | | |

AR at 12-20.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ properly evaluate the medical opinions?

2. Did the ALJ err in assessing plaintiff's RFC?

3. Did the ALJ err in finding the plaintiff less than credible?

Dkt. No. 16 at 2.

## VII. DISCUSSION

A. <u>The ALJ Erred in Part in His Evaluation of the Medical Evidence</u>

   *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

Plaintiff's initial argument is that the ALJ erred in his evaluation of the medical opinions of Dr. Phyllis Sanchez, Dr. David Mashburn, Dawn Finney and Alma Zumiga. Plaintiff also argues that by giving significant weight to the opinions of Dr. Kraft, a non-treating, non-examining psychologist, the ALJ violated the hierarchy of medical opinions set forth above.

### 2. Dr. Sanchez

Phyllis Sanchez, Ph.D., saw and evaluated plaintiff on October 31, 2008. AR at 446-54. Dr. Sanchez spoke with plaintiff, administered a mini-mental exam, a Beck Depression evaluation, and prepared a summary of her test evaluations. On the Washington State Department of Social and Health Services ("DSHA") evaluation form, she opined plaintiff had severe mental limitations in the areas of verbal expressions of anxiety or fear, expression of anger, and paranoid behavior. She also found moderate limitations in the areas of depressed mood, suicidal trends, social withdrawal, motor agitation, and hallucinations. She diagnosed post-traumatic stress disorder and panic disorder. AR at 443. She also opined that plaintiff had "marked" severity limitations in his abilities to perform routine tasks, control physical or motor movements and maintain appropriate behavior, and his ability to care for himself, including personal hygiene and appearance, with "moderate" severity in his abilities to understand, remember and follow simple and complex instructions, perform routine tasks, interact appropriately to co-workers and supervisors and tolerate pressure of a normal workday setting. AR at 444.

As to her opinions, the ALJ noted:

> In an October 2008 DSHS mental assessment, Phyllis Sanchez Ph.D. opined moderate to marked cognitive limitations and moderate to marked social limitations. Dr. Sanchez's opinion is not supported by her clinical findings, which included a score of 28/30 on mental status exam. Further, in determining the claimant's social limitations, Dr. Sanchez reasoned that the claimant's criminal history makes it difficult for him to find a job. The undersigned gives her opinion little weight.

AR at 17.

Plaintiff argues that the ALJ "improperly rejected" Dr. Sanchez's evaluation and that a close review of her report "reveals a very different assessment than that of the ALJ, who improperly ignores the vast majority of Dr. Sanchez's findings." Dkt. No. 16 at 14. A close review of her report, however, confirms the ALJ did not err in his assessment of Dr. Sanchez's evaluation. Dr. Sanchez's mini-mental state testing does not coincide with moderate to marked cognitive limitations. Dr. Sanchez reported plaintiff scored 28/30 on the mental examination. AR at 448. A score of 25 or higher on a mini-mental examination reflects normal cognitive functioning. Folstein MF, Solstein SE, McHugh PR. "Mini-mental state: A Practical Method for Grading the Cognitive State of Patients for the Clinician," 12 *J Psychiatric Research* 189-98 (1975).

As to the level of plaintiff's social functioning limitations, Dr. Sanchez commented patient "quite depressed. No work in a while w/problems w/mood, past criminal record both interfere with ability to find job." AR at 448. To be disabled, a plaintiff must establish that he is unable to work, due to "medically determinable impairments." 42 U.S.C. § 405(g). Dr. Sanchez's opinions were given less weight in the social functioning area because they were based, at least in part, on non-relevant considerations – namely that employers might not be willing to hire a specific person based on reasons other than his medically determinable impairments. 20 C.F.R. §§ 404.1566, 416.966.

REPORT AND RECOMMENDATION - 9

The ALJ reviewed Dr. Sanchez's test results in this case, and found that they did not support the level of cognitive impairment opined by Dr. Sanchez. In addition, the opinion regarding social functioning limitations was based, at least in part, on observations not related to the disability review standards. This is not, as suggested by plaintiff, an attempt to play doctor and make independent medical findings. Dkt. No. 21 at 2. Rather, this is, in fact, the responsibility of the ALJ as part of his obligation to review the medical evidence in the first instance. An ALJ does not err when he rejects a medical opinion that is brief, conclusory, and inadequately supported by or, as naturally follows, contradicted by the tests results. *Thomas*, 278 F.3d at 957. The ALJ did not err in his evaluation of Dr. Sanchez's opinions.

### 3. *Dawn Finney, LICSW*

Dawn Finney is a mental health counselor who filled out two DSHS psychological evaluations regarding plaintiff, one in August 2009, the second in February 2010. AR at 511-16, 505-10. In addition, she submitted a single page letter. AR at 517. In her reports, she opines that plaintiff suffers from depression, attention deficit disorder and anxiety disorder. AR at 506, 512. She found only mildly severe cognitive limitations and social functioning limitations, with the exception of plaintiff's ability to respond appropriately and to tolerate the pressures of a normal work setting, as to which she opined that the severity was moderate. AR at 508, 514. When asked what work the plaintiff was able to perform, despite his impairments, she first opined "Light labor that does not involve lifting overhead for any consistent time." AR at 514. The second opinion was a bit more specific, which stated: Possibly light labor that does not involve lifting overhead or lifting any weight over 30 pounds safely." AR at 508.

As to Ms. Finney's opinions, the ALJ noted:

> In an August 2009 DSHS mental assessment, Dawn Finney LICSW, one of the claimant's mental health counselors, opined mild to moderate cognitive limitations and mild to moderate social limitations. She indicated that the

claimant is capable of performing "light labor that does not involve lifting overhead for any consistent time. In February of 2010, Ms. Finney opined mild to moderate cognitive limitations and mild to moderate social limitations. She indicated that the claimant could perform "possibly light labor that does not involve lifting overhead or lifting any weight over 30 pounds safely." Ms. Finney had the opportunity to examine the claimant on multiple occasions, and her conclusions regarding the claimant's mental limitations are consistent with the medical record as a whole. The undersigned gives her opinion regarding the claimant's mental limitations significant weight. The undersigned gives her opinion regarding the claimant's physical limitations little weight, as this is outside the scope of her expertise, and there is no indication that she performed a physical examination.

AR at 17. Plaintiff argues that the ALJ erred, because the comment regarding his possible return to work only applied to his physical limitations, not his mental impairments, and that in so misconstruing her comments, the ALJ ignored the majority of the report dealing with plaintiff's mental impairments. Dkt. No. 16 at 13.

Unfortunately, it is plaintiff who is misreading the report of Ms. Finney. Not once, but twice, Ms. Finney opined that plaintiff was capable of engaging in light labor "despite his/her impairments." Not once, but twice, Ms. Finney identified the majority of his limitations as mild, with only the ability to respond to the pressure of a normal workday setting as "moderate." Not once, but twice, Ms. Finney indicated that the length of time that plaintiff would be impaired to the degree found (mostly mild but one moderate finding) would be a maximum of 9 months. The ALJ's assessment of Ms. Finney's opinions is fully consistent with her reports. The ALJ did not err in his assessment of Ms. Finney's opinions.

    4.  *David Mashburn, Ph. D.*

In May 2007, Dr. Mashburn conducted a DSHS evaluation of plaintiff. AR at 435-41. As to plaintiff's functional mental disorders, Dr. Mashburn opined plaintiff had a "marked" severity in his depression, "moderate" severity in his verbal expression of anxiety, social withdrawal, motor agitation and motor retardation, and hyperactivity. He rated the severity

REPORT AND RECOMMENDATION - 11

level as "mild" for suicidal trends, paranoid behavior, hallucinations and physical complaints. He opined that there was no indication of drug abuse. AR at 436. In terms of his functional limitations, Dr. Mashburn assigned a severity level of "marked" to plaintiff's ability to perform routine tasks, "moderate" level of severity to plaintiff's ability to understand complex instructions, interact appropriately in public contacts, respond to pressures of a normal work setting and maintain appropriate behavior. He opined that plaintiff had a "mild" level of severity involving his ability to understand, remember and follow simple instructions, learn new tasks, perform routine tasks, relate appropriately to co-workers and supervisors and hygiene and appearance. AR at 437. He described his thought process as logical, appropriate and responsive, diagnosed him with probable major depression with mild psychotic symptoms, ADHD, R/O bipolar, and alcohol abuse in remission. He also assigned a Global Assessment of Functioning ("GAF") score[3] of 54. AR at 441.

The ALJ assigned "little weight" to Dr. Mashburn's opinion:

> In a May 2007 DSHS metal assessment, consulting psychologist David Mashburn, Ph.D. opined mild to marked cognitive limitations and mild to moderate social limitations. He further noted the claimant "appears to have learning difficulty but can learn simple and detailed jobs." This conclusion is inconsistent with a finding of marked cognitive limitations. In addition, Dr.

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.* A GAF score of 31-40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." A GAF score of 21-30 indicates "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communications or judgment" or "inability to function in all areas." *Id.*

REPORT AND RECOMMENDATION - 12

> Mashburn did not adequately consider the claimant's substance dependence, as the claimant did not disclose his history of heroin abuse. The undersigned accordingly gives Dr. Mashburn's opinion little weight.

AR at 18. Plaintiff argues the ALJ erred, and that the ALJ simply gave short shrift to Dr. Mashburn's opinions, and failed to otherwise recognize that as an examining physician, the ALJ was required to provide specific and legitimate reasons, supported by the record, before rejecting them. The Commissioner responds that the alleged inconsistency and failure to be aware of plaintiff's heroin abuse justifies rejection.

The ALJ did err in his evaluation of Dr. Mashburn's opinions. The alleged questionnaire inconsistency used to reject all of the opinions and testing of Dr. Mashburn relates to the following:

> Are any additional tests or consultations needed?
>
> Yes
>
> Explain:
>
> Maybe IQ—appears to have some learning difficulty, but can learn simple and detailed jobs.

AR at 438. The "marked" severity limitation in plaintiff's cognitive functions was identified as plaintiff's "ability to perform routine tasks." Dr. Mashburn indicated only "mild" limitations in plaintiff's ability to learn new tasks, and ability to understand and follow simple instructions, and "moderate" severity limitations on his ability to understand, remember and follow complex instructions. AR at 437. It is not apparent on its face, and certainly the ALJ's decision does not make clear what the alleged inconsistency or contradiction is. Accordingly, the Court cannot find that the ALJ offered specific and legitimate reasons supported by the record that would warrant the rejection of Dr. Mashburn's opinions. This will require remand for further proceedings so that the ALJ can reevaluate plaintiff's mental impairments including

Dr. Mashburn's opinions, consistent with the standards for doing so set forth in Section VII (A)(1) above.

### 5. *Alba Zumiga, LMHC*

In April 2008, Alba Zumiga, LMHC, submitted a DSHS psychological evaluation form. With respect to plaintiff functional mental disorders, Ms. Zumiga opined plaintiff had a "marked" level of severity impairments in anxiety, expressions of anger, and paranoid behavior, "moderate" levels of severity in depressed mood, suicidal trends, social withdrawal, motor agitation and hallucinations, and a "mild" level of severity impairment in hyperactivity, and a severe level of impairment in his physical complaints and his global illness. AR at 443. She also opined his functional limitations were "markedly" impaired in the ability to perform routine tasks, personal hygiene, and to maintain personal behavior; "moderately" impaired regarding his ability to understand and follow simple and complex instructions, exercise judgment, relate to co-workers and supervisors and tolerate the pressures of a normal workday setting; and "mildly" impaired in his ability learn new tasks and interact appropriately in public contacts. AR at 444. She diagnosed him with PTSD and panic disorder. AR at 443.

The ALJ gave Ms. Zumiga's evaluation little weight:

> In an April 2008 DSHS mental assessment, Alba Zumiga LMHC, opined mild to marked cognitive limitations, and mild to marked social limitations. Ms. Zumiga noted no clinical findings to support the opined limitations and her opinion is inconsistent with the claimant's daily activities, as well as his improvement with treatment. The undersigned gives her opinion little weight.

AR at 18. The ALJ's analysis is simply too summary to accept. First, it is unclear what the relationship was between plaintiff and Ms. Zumiga. For example, if plaintiff were seen frequently by Ms. Zumiga, then the opinions would have more weight, even if "clinical findings" were not included. The ALJ did not ask about this during the plaintiff's hearing, nor did he develop the record to ascertain this information. There is, however, some reason to

REPORT AND RECOMMENDATION - 14

believe she had more than a short-term involvement with plaintiff's treatment. When the questionnaire asked "Describe the effects of prescribed medications on the individual's ability to perform normal day to day work activities," Ms. Zumiga noted "well reported," suggesting substantial familiarity with the records or with plaintiff. AR at 444. Second, it is unclear what daily activities the ALJ believes contradict Ms. Zumiga's opinions. The Commissioner suggests that the ALJ may have meant this to refer to plaintiff sitting on a riding lawn mower to mow sections of a 3 acre parcel. Dkt. No 17 at 9. There are two problems with this suggestion. First, the ALJ does not actually specify which daily activities, leaving it to the Commissioner to speculate as to what the ALJ intended. Second, assuming the Commissioner's speculation is what the ALJ had in mind, it is not self-evident that the ability to sit on a riding lawn mower is inconsistent with being unable to work. On remand, the ALJ should reevaluate the opinion of Ms. Zumiga.

      *6. Patricia Kraft, Ph.D.*

  Dr. Kraft is a State psychologist who reviewed plaintiff's records and concluded plaintiff was moderately limited in eight areas, but found he was capable of simple, routine tasks, and able to follow one and two step instructions. She also concluded he would have episodic lapses of attention that would not interfere with his ability to do productive work, and further found that he should have limited contact with the general public, but could have superficial contact with coworkers and supervisors. Finally, she opined that he could need additional time to learn new work procedures and benefit from assistance developing work related goals. AR at 409. The ALJ found this consistent with the medical record as a whole and assigned it significant weight. AR at 17.

  As noted above, although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may

nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33. Nevertheless, in light of the directed remand to reevaluate the opinions of Dr. Mashburn and Ms. Zumiga, the ALJ should also consider whether the opinion of non-examining physician Kraft should continue to receive significant weight.

### 7. *Conclusion Regarding Medical Evidence*

The ALJ did not err in his assessment and treatment of the opinions of Dr. Sanchez and Ms. Finney. The ALJ did err in his evaluation of the opinions of Dr. Mashburn and Ms. Zumiga. On remand, the ALJ should reevaluate those opinions, consistent with this opinion. In addition, on remand, the ALJ should consider whether, in light of the reevaluation, Ms. Kraft's opinion should continue to receive significant weight. Because the ALJ erred in part in his evaluation of the medical evidence, the ALJ should revisit his RFC determination in light of this reevaluation,

### B. The AlJ Erred in His Credibility Assessment

The ALJ found plaintiff to be less than credible because, according to the ALJ (1) the allegations of symptoms and limitations were inconsistent with the objective medical evidence; (2) treatment notes indicated that plaintiff's symptoms improved with treatment; (3) plaintiff engaged in daily activities inconsistent with the degree of limitation reported; (4) inconsistent reporting regarding drug use; (5) plaintiff engaged in work at substantial gainful activity levels in the past, despite his ADHD;  and (6) defendant has been convicted of a crime, which undermines his credibility. AR at 16-17.

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony

requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The record does not support several of the reasons provided for discounting plaintiff's credibility. First, although it seems that plaintiff's statements regarding his physical limitations are not consistent with limitations greater than the RFC assessment, the same cannot necessarily be said about plaintiff's mental impairments. Indeed, the remand directed to reevaluate portions of the medical evidence will require the ALJ to reconsider whether the plaintiff's testimony is inconsistent with the medical evidence. Second, although plaintiff

REPORT AND RECOMMENDATION - 17

made some progress dealing with his mental impairments as reported by Ms. Finney, the ALJ failed to indicate why demonstrating some progress on meeting established goals made plaintiff less credible. Third, the reliance on plaintiff's expressed desire to work is not something that would impugn plaintiff's credibility, but rather be something that would support it. Fourth, the fact that plaintiff had jobs in the past, despite his ADHD ignores the fact that as a general proposition, plaintiff was only able to hold many jobs for very short periods of time. Fifth, if activities of daily living are used to discredit plaintiff's credibility, then the ALJ should indicate how the actual abilities relate to the ability to work. For example, in the same report cited by the ALJ to demonstrate improvement, Ms. Finney also described mowing, which, as she described it as part of plaintiff's daily activities, hardly describes a person capable of full-time work: "Planned wake up time in early morning, gets out of bed within one hour, showers, intermittent yet inconsistent yard work (some days up to hours(with breaks)) other days 1 hour, time with children, physical therapy and medical appointments 3x per week." AR at 513.

On remand, the ALJ should revisit the issue of plaintiff's credibility.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 3rd day of May, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge